## BITTINGER v WESTERN & SOUTHERN LIFE INSURANCE CO. OF CINCINNATI

Ohio Appeals, 1st Dist, Butler Co.

No. 773. Decided Oct. 24, 1939

Baden & Fiehrer, Hamilton, for appellee.

John D. Andrews, Hamilton, for appellant.

### OPINION

By HAMILTON, J.

Appeal on questions of law from Court of Common Pleas of Butler County, Ohio.

Plaintiff-appellee, Edna Bittinger, brought an action against the defendant Insurance Company, seeking to recover on an insurance policy issued on the life of her husband, Jack E. Bittinger, she being the beneficiary of the policy. If the policy were collectable, the amount due thereunder would be $2,358.00. The policy contained the following provision:

"SUICIDE—In case of self destruction of the insured (whether sane or insane) within two (2) years from the date hereof, the liability of the company shall be limited to the amount of the premiums paid on the policy."

Due notice of the death of the insured was given to the Insurance Company, but it refused to pay the amount due under the policy.

The defense was that Bittinger's death, June 10th, 1938, was caused by self-destruction or suicide, the same being within two years of the date of the issuance of the policy, and that defendant's liability was limited to the amount of the premiums paid, which the Insurance Company had tendered to the plaintiff, and tender refused by the plaintiff.

To this aneswer, the plaintiff replied, denying that the death of Bittinger was by self-destruction or suicide.

The sole issue therefore raised by the pleadings is, whether or not Bittinger did take his own life on June 10th, 1938.

The case was tried to a jury, and the jury returned a verdict in favor of the plaintiff for the full amount of the policy; it necessarily finding that, under the evidence, Bittinger did not take his own life, as claimed by the defense.

The sole question of error raised in this appeal is that the verdict and judgment are against the weight of the evidence.

Bittinger operated a filling station, and had so operated it for some time. Adjacent to the front office was a small garage room, and adjacent thereto was a ladies' waiting room. Stored in the garage room was a neighbor's automobile, kept there for the accom-

modation of the neighbor, with the consent of Bittinger.

On the morning of June 10th, 1938, some customers came to the garage for service and it was closed. After a lapse of time, some of the customers investigated and found Bittinger on a couch in the ladies' waiting room. He was dead.

The coroner's verdict was that death was the result of monoxide poisoning.

These are the only facts directly bearing on his death.

It was found that the engine of the automobile in the garage was warm, evidently having been run. However, it was not running at the time, and, apparently had not been running for some period of time.

The burden of proving suicide was on the defendant Insurance Company. The rule is pronounced in 14 R. C. L., page 1235:

"If the circumstances under which the insured came to his death are such that it may have resulted from suicide, and the insurer alleges that fact as a defense, the burden is on it to establish that fact, for the law presumes that the insured did not intentionally take his own life."

This rule has been pronounced in many of the states including Ohio, and there is no pronouncement to the contrary. Some of the states have held that proof of suicide must be shown by clear and convincing evidence. Other decisions hold that proof by a preponderance of the evidence is sufficient, but that when circumstantial evidence is relied upon to establish death by suicide, the person making that affirmation, must make it by facts which exclude any reasonable hypothesis of natural or accidental death.

In the case of **Mitchell v Industrial Commission, 135 Oh St 110**, the first and second paragraphs of the syllabus are:

"1. The presumption against suicide is not a rigid arbitrary rule of law.

"2. Such presumption is in the nature of evidence and operates to its fullest extent only where there is no proof as to whether a death, by external and violent means, was accidental or suicidal."

The evidence adduced by the defendant on this question was purely circumstantial, with little probative value. As an example, defendant-appellant here urges there was no reason for Bittinger to start the car stored in the garage; that the starting of this automobile must have been the cause which produced the monoxide fumes, from the effects of which Bittinger died.

It was further claimed that he was the Treasurer of a Veterans' Association, and, as such, was somewhat involved in his accounts.

The evidence discloses that Bittinger was happily married, with a family of small children; that he was of a happy disposition, and at no time worried about any difficulty that he might be in. He started to work the morning of June 10th, 1938, from his home in a happy mood, and there was no suggestion or indication of any trouble. He had arranged to take care of the automobile of an acquaintance, washing it and delivering it. It is suggested by plaintiff that the reason for starting the neighbor's car was that he was going to take it to get the car upon which he had arranged to work.

Enough has been said to show that the questions in the case were purely matters for the consideration and determination of the jury. The evidence adduced was not sufficient to overthrow the presumption that Bittinger did not commit suicide, which presumption obtains under the law, as above stated.

Our conclusion is that the verdict and judgment are not manifestly against the weight of the evidence, and the judgment is affirmed.

MATTHEWS & ROSS, JJ., concur.